IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| WESTERN WATERSHEDS PROJECT, | ) ) ) | Case No. CV-06-277-E-BLW |
| Plaintiff, | ) ) | **MEMORANDUM DECISION AND ORDER** |
| v. | ) ) | |
| U.S. FISH AND WILDLIFE SERVICE, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it the Government's motion to withdraw from a

Stipulation, and WWP's motion to alter or amend a Judgment.  At the conclusion

of the oral argument on February 29, 2008, the Court denied the motion to

withdraw, approved the Stipulation, and deemed moot the motion to alter or

amend.  This decision will explain in more detail the Court's analysis.

## FACTUAL BACKGROUND

The Government seeks to back out of an agreement it entered into with

WWP.  The withdrawal is justified, the Government argues, because it made an

error in approving the agreement.  WWP objects.  The Court will resolve the issue

after reviewing the events leading up to the agreement, and the agreement itself.

**Memorandum Decision and Order – Page 1**

On December 4, 2007, the Court issued a decision requiring the FWS to conduct a new listing determination for the sage-grouse.  A key component of the Court's decision was a finding that the FWS's decision had been improperly influenced by political considerations.

Immediately thereafter, WWP filed a motion to amend that decision to require the FWS to conduct the analysis within 90 days – in other words, by March of 2008.  The FWS objected, filing the Declaration of its Assistant Director of Endangered Species, Bryan Arroyo, stating that "[t]he [FWS] does not believe this can be accomplished within the 90-day time-frame proposed by [WWP]." *See Arroyo Declaration* at p. 2.

Arroyo supported his argument for more time by asserting that the sage-grouse evaluation will be "inherently complex due to the fact that the species occupies a wide geographical area that encompasses major ecological areas . . . ." *Id*.  He also argued that it "be a time consuming process" to review the extensive literature that had been published on the sage-grouse since the earlier listing determination.  *Id*. at p. 3.  Moreover, Arroyo observed, a revised WAFWA Conservation Assessment (CA) was due to be published in November of 2008, and the FWS might need more time to evaluate that study.

Based on these arguments, the FWS proposed that it be allowed to complete

**Memorandum Decision and Order – Page 2**

its determination either (1) by December 4, 2008, if the CA is not published by then or if the FWS determined that further consideration of the CA was not needed, or (2) by June 1, 2009, if the FWS determines that full consideration of the CA is needed.

Until the FWS filed this response, WWP had not been aware that a revised CA was due to be published.  This knowledge changed WWP's position, and its counsel, Laird Lucas, began a series of e-mail negotiations with DOJ's counsel Robert Williams.

Receptive to FWS's plea for additional time, but skeptical that the agency needed until June of 2009, Lucas pressed the point with Williams:  "The [FWS] surely has sage grouse experts who are following the current literature – just as we are – and it does not take 8 months to review these articles and update the prior status review, we feel."  Williams responded that the FWS needed the additional time due to the "tremendous amount of new – and often conflicting – information that has become available since the initial 12-month finding."  *See January 22, 2008, e-mail*.  Williams went on to explain that the FWS sage-grouse experts, including Pat Diebert, have "not had the time to study [the new studies] in detail" because they have been devoting "the majority of their time" to other species.  *See January 22, 2008 e-mail.*

**Memorandum Decision and Order – Page 3**

Taking into account these concerns, Lucas submitted a draft stipulation for Williams' consideration. Williams responded that he had "discussed it with my client and we think it looks good." *See January 25, 2008 e-mail*. Williams proposed, however, lengthening the time for public comments to the revised CA to 60 days (from 30 days) on the ground that the CA would "be an enormous document." In addition, Williams proposed an initial comment period of 90 days instead of 60 days. *Id*.

Lucas e-mailed his agreement and asked if he should file the stipulation and proposed order. Williams requested that Lucas "hold off" because he needed "to get final approval from my management first." *See January 28, 2008, e-mail.* Two days later, Williams e-mailed Lucas that "I have received final approval from my management. You may file the stipulation as we agreed." *See January 30, 2008, e-mail.* Later the same day, Williams also approved the proposed Order that accompanied the Stipulation. Lucas filed both the Stipulation and the proposed Order with the Court.

The Stipulation and Order that Williams and his superiors at DOJ approved stated that if the CA is published by November of 2008, the FWS "will publish notice in [the] Federal Register of this fact and allow additional public comment for 60 days." About a week after these documents were filed with the Court, the

**Memorandum Decision and Order – Page 4**

FWS filed its motion to withdraw from the Stipulation.

The FWS motion was accompanied by another Declaration from Bryan Arroyo, this time asserting that the Stipulation had never been properly approved by the FWS. Arroyo asserts that "[a]s a result of this miscommunication, the stipulation was filed without the approvals that are required within the [FWS] and the Solicitor's Office." *See Second Arroyo Declaration* at p. 3. Arroyo alleges that under "our customary process" the Stipulation should have been approved by himself, the Deputy Director and/or the Director of the FWS, and the Solicitor. Apparently, through some unspecified "miscommunication," the Stipulation was never approved by any of these officials.

Arroyo recognizes that he was provided with the Stipulation, and that it was circulated among his staff, as well as the staff of the FWS "regional and field offices who had the lead for preparing the remanded finding." *See Arroyo Declaration* at p. 2. But Arroyo states that he never read the Stipulation because he believed there were more changes to be made. Due to some unspecified miscommunication between the FWS and Williams, Williams and his superiors approved the Stipulation.

Arroyo claims that if the Stipulation had been properly vetted, "we would not have approved the language in the Stipulation that eliminated the [FWS's]

**Memorandum Decision and Order – Page 5**

discretion whether or not it is necessary to hold a 60-day notice and comment period after the [CA] is published . . . ." *Id.* at p. 5.  On the basis of Arroyo's Declaration, the FWS seeks to back out of the Stipulation and retain the discretion to issue a listing determination in December of 2008.

## ANALYSIS

Settlement agreements are private contracts, and enforceable as such.  *See Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989).  An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law.  *Id.*  Each party agrees to "extinguish those legal rights it sought to enforce through litigation in exchange for those rights secured by the contract."  *Id.* (quoting *Miller v. Fairchild Industries, Inc.,* 797 F.2d 727, 733 (9th Cir. 1986)). Settlement agreements are not contrary to public policy; rather, public policy "wisely encourages settlements," *see McDermott, Inc. v. AmClyde*, 511 U.S. 202, 215 (1994), and strongly favors enforcement of settlement agreements.  *Jeff D.*, 899 F.2d at 759.

These principles apply with equal strength to the Government.  *See United States v. McInnes*, 556 F.2d 436 (9th Cir. 1977).  In *McInnes*, the DOJ attorney agreed to settle a case for his client, the Navy.  Later the Navy attempted to back out of the deal – that had never been reduced to a signed writing – complaining that

**Memorandum Decision and Order – Page 6**

(1) no formal agreement was reached, and (2) the DOJ attorney had no authority

from the Navy to agree to this settlement.

Applying standard contract principles, the Circuit rejected the Navy's

arguments.  The Circuit held that an agreement had been reached between the DOJ

attorney and plaintiff's counsel to settle the case.  In addition, the Circuit held that

the DOJ attorney is authorized by law to settle claims against the Government: "If

the Navy objected to the settlement, as the Government suggests, then that was for

the [DOJ attorney] to consider."  *Id*. at 441.  After emphasizing the importance of

settlements, the Circuit held that the Navy was bound by the agreement entered

into by the DOJ attorney.  *Id*.

*McInnes* controls the result here.  There is no dispute that Williams and

Lucas reached an agreement.  There is also no dispute that Williams' superiors at

the DOJ approved the agreement.  Finally, there is no evidence to support a claim

of mutual mistake, duress, coercion, or lack of consideration.

The FWS argues that the Stipulation was never binding on it until it was

signed by the Court.  However, the Circuit found the agreement binding on the

Navy in *McInnes* even though there is no indication in that decision that the Court

ever approved the agreement.  While the FWS cites the Local Rule stating that an

agreement is not binding on the parties until it is signed by the Court, that Rule

**Memorandum Decision and Order – Page 7**

does not prevent the parties from reaching an agreement that will be treated as a contract – and binding as such.

For all these reasons, the Court will deny the FWS's motion to withdraw from the Stipulation.  The Court will approve the Stipulation and deem moot WWP's motion to alter or amend.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to withdraw (Docket No. 131) is DENIED.

IT IS FURTHER ORDERED, that the Stipulation (Docket No. 130) is APPROVED.

IT IS FURTHER ORDERED, that the motion to alter or amend (Docket No. 122) is DEEMED MOOT.

DATED:  **February 29, 2008**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order – Page 8**